THE STATE EX REL. WHIO–TV–7 *v.* LOWE ET AL.

THE STATE EX REL. WDTN–TV–2, APPELLANT, *v.* LOWE ET AL., APPELLEES.

[Cite as *State ex rel. WHIO–TV–7 v. Lowe* (1997), 77 Ohio St.3d 350.]

(Nos. 95–2224 and 95–2356—Submitted September
10, 1996—Decided January 22, 1997.)

352

*Porter, Wright, Morris & Arthur, Robert E. Portune, Thomas L. Czechowski* and *Linda S. Holmes,* for relator in case No. 95–2224.

*Pickrel, Schaeffer & Ebeling, Andrew C. Storar* and *Michael W. Sandner,* for appellant WDTN–TV–2 in case No. 95–2356.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Carley J. Ingram,* Assistant Prosecuting Attorney, for respondents Heck and Franceschelli in case No. 95–2224, and appellee Montgomery County Prosecutor's Office in case No. 95–2356.

*J. Anthony Sawyer,* Director of Law, for respondent Lowe in case No. 95–2224, and appellee Lowe in case No. 95–2356.

*Bieser, Greer & Landis, Michael W. Krumholtz* and *David P. Williamson,* for intervening respondent Ritchie in case No. 95–2224, and appellee Ritchie in case No. 95–2356.

ALICE ROBIE RESNICK, J. This case presents the issue of whether information that the criminal prosecutor has disclosed to the defendant for discovery purposes pursuant to Crim.R. 16, and therefore ordinarily would not be considered to be work product or trial preparation materials, is precluded from release to the public pursuant to the public records doctrine.

Appellant and relator argue that because the prosecution has already disclosed to the defendant the subject information pursuant to the criminal discovery rules, the information cannot be deemed "work product" and thus is subject to release pursuant to Ohio's public records doctrine, R.C. 149.43. Appellees and respondents contend that simply because the prosecutor discloses information to the defendant pursuant to Crim.R. 16(B), that information does not automatically become disclosable to the public pursuant to R.C. 149.43. All parties cite our decision in *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraphs three and five of the syllabus, in support of their assertions.

Crim.R. 16(B) requires the prosecuting attorney to disclose certain information to the criminal defendant upon the defendant's request. This evidence includes

any statement of the defendant or co-defendant, the defendant's prior record, and documents and tangible objects, any reports of examination and tests, any witness names and addresses and their criminal records, and any evidence favorable to the defendant. Crim.R. 16(B)(1)(a) through (f). The prosecutor must also allow for the defendant's *in camera* inspection of any witness's statement. Crim.R. 16(B)(1)(g).

The purpose behind the Rules of Criminal Procedure "is to remove the element of gamesmanship from a trial." *State v. Howard* (1978), 56 Ohio St.2d 328, 333, 10 O.O.3d 448, 451, 383 N.E.2d 912, 915. As such criminal discovery is a matter solely between the prosecutor and the defendant. See, generally, *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 3, 511 N.E.2d 1138, 1140. The rules governing discovery do not envision a third party's access to the information exchanged. As the United States Court of Appeals for the Eleventh Circuit stated in *United States v. Anderson* (C.A.11, 1986), 799 F.2d 1438, 1441:

"Discovery is neither a public process nor typically a matter of public record. Historically, discovery materials were not available to the public or press. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32–34, 104 S.Ct. 2199, 2207–08, 81 L.Ed.2d 17 [26–27] (1984) (pretrial interrogatories and depositions 'were not open to the public at common law'); *Gannett Co. v. DePasquale*, 443 U.S. 368, 396, 99 S.Ct. 2898, 2914, 61 L.Ed.2d 608 [632] (1979) (Burger, C.J., concurring) ('[I]t has never occurred to anyone, as far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants.'). Moreover, documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private. Marcus, *Myth and Reality in Protective Order Litigation*, 69 Cornell L.Rev. 1, 15 (1983).

"If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe. Not only would voluntary discovery be chilled, but whatever discovery and court encouragement that would take place would be oral, which is undesirable to the extent that it creates misunderstanding and surprise for the litigants and the trial judge. Litigants should not be discouraged from putting their discovery agreements in writing, and district judges should not be discouraged from facilitating voluntary discovery."

We agree with the foregoing that discovery should be encouraged and that public disclosure would have a chilling effect on the parties' search for and exchange of information pursuant to the discovery rules.

By contrast, the purpose of Ohio's Public Records Act, R.C. 149.43, is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy. *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 420, 667 N.E.2d 1223, 1226–1227; see *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 81, 526 N.E.2d 786, 788. However, there are certain governmental activities that would be "totally frustrated if conducted openly." *Press–Enterprise Co. v. California Superior Court* (1986), 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 10. Criminal discovery is one of those governmental activities that would be frustrated if subjected to the required disclosure contemplated by R.C. 149.43. If all information exchanged is subject to complete public disclosure, then parties may cease open exchange. This would thwart entirely the objective of removing "the element of gamesmanship from a trial." *Howard,* 56 Ohio St.2d at 333, 10 O.O.3d at 451, 383 N.E.2d at 915. We therefore hold that information that a criminal prosecutor has disclosed to the defendant for discovery purposes pursuant to Crim.R. 16 is not thereby subject to release as a "public record" pursuant to R.C. 149.43.

Relator also argues that the records must be released because of the public's First Amendment right to information regarding the trial. In *Seattle Times Co. v. Rhinehart* (1984), 467 U.S. 20, 27, 104 S.Ct. 2199, 2204, 81 L.Ed.2d 17, 23, the United States Supreme Court considered a trial court's protective order prohibiting the litigants from publishing, disseminating, or using certain information obtained through pretrial discovery in any way except where necessary to prepare for trial. The Supreme Court noted that the danger of abusing the liberal pretrial discovery rules by publicly releasing information that is irrelevant and could be damaging to reputation and privacy is great and thus the court held that the governmental interest in preventing such abuse is substantial. *Id.* at 34–35, 104 S.Ct. at 2208–2209, 81 L.Ed.2d at 28. The court also noted that pretrial discovery is not a public component of a trial and any controls on the discovery process do not prevent the public dissemination of information gathered through means *other* than discovery. *Id.* at 33–34, 104 S.Ct. at 2207–2208, 81 L.Ed.2d at 27. Accordingly the court held that the limitation on " 'First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved,' " *id.* at 32, 104 S.Ct. at 2207, 81 L.Ed.2d at 26, quoting *Procunier v. Martinez* (1974), 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224, 240, and thus the protective order did not violate the First Amendment.

The foregoing reasoning supports both a protective order as considered in *Seattle Times Co.* and this court's denial of a writ of mandamus prohibiting public dissemination of information exchanged through pretrial discovery in the case *sub judice.* Accordingly, appellant's and relator's First Amendment rights have not been violated by denial of access to the information in question.

For the above reasons, the writ of mandamus is denied in case No. 95–2224, and the judgment of the court of appeals is affirmed in case No. 95–2356.

*Writ of mandamus*
*denied in case No. 95–2224*
*and judgment*
*affirmed in case No. 95–2356.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

STRATTON, J., concurs separately.

STRATTON, J., concurring. The court's decision today strikes a careful balance between the public's right to know and the need to guard the fundamental integrity and fairness of a trial for both the defendant and the state.

Appellant and relator focus on the jury process and the curative powers of a judge to correct pretrial publicity problems generated by publicizing the discovery records at issue, such as the use of voir dire and venue changes to keep the jury pool untainted. However, a more serious issue which affects the integrity of the trial itself, and which no judicial order can cure, is the tainting of witness testimony from witness exposure to the publicized information.

During trial, witnesses are separated to keep their testimony untainted, prevent collusion, or prevent unintended, subconscious shading of their testimony because of other knowledge gained about the case. If a witness learns through the media of the confession of a defendant, statements by other witnesses, test results, or expert witness reports, the witness's testimony may become tainted and unreliable. Witnesses may not only use the publicized information to consciously bolster the prosecution's or defense's case, but also may be subconsciously influenced by this information so as to shade their testimony as a result of perceptions and beliefs newly formed from exposure to the publicized information. Once a witness is tainted, the problem cannot be reversed. The court correctly struck a balance between the public's right to know and the integrity of the trial itself.