[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hogan Lovells U.S., L.L.P. v. Ohio Dept. of Rehab. & Corr.*, Slip Opinion No. 2021-Ohio-1762.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1762

THE STATE EX REL. HOGAN LOVELLS U.S., L.L.P., ET AL. *v.* OHIO DEPARTMENT OF REHABILITATION AND CORRECTION.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hogan Lovells U.S., L.L.P. v. Ohio Dept. of Rehab. & Corr.*, Slip Opinion No. 2021-Ohio-1762.]

*Mandamus—Public-records law—Records covered by the attorney-client or attorney-work-product privilege are not public records—Records that relate or refer to an inmate are not public records and are exempt from disclosure under R.C. 5120.21(F)—Writ denied.*

(No. 2019-1511—Submitted January 26, 2021—Decided May 26, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is the second public-records action filed in this court by relators, Hogan Lovells U.S., L.L.P., and Elizabeth Och (collectively, "Hogan Lovells"), against respondent, the Ohio Department of Rehabilitation and Correction ("DRC").

In the previous case, we granted Hogan Lovells's request for a writ of mandamus in part and ordered DRC to provide certain records, with redactions, relating to DRC's supply of drugs for its use in lethal injections. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 2, 48. This case involves another request for DRC's records relating to lethal injections.

{¶ 2} We deny the writ in this case. But because DRC failed to timely respond to Hogan Lovells's request, we grant Hogan Lovells's request for an award of statutory damages in the amount of $500. We deny Hogan Lovells's request for an award of court costs. We defer our decision on Hogan Lovells's request for attorney fees pending Hogan Lovells's submission of an itemized application.

## I. BACKGROUND

{¶ 3} In March 2016, Hogan Lovells asked DRC to produce records relating to drugs intended to be used or considered for use in lethal injections. *Id*. at ¶ 2. After nearly nine months had passed without DRC providing a substantive response, Hogan Lovells filed a mandamus action in this court. *Id*. at ¶ 3-4. DRC eventually gave Hogan Lovells some responsive records, but it withheld or redacted other records based on a claimed exemption under R.C. 2949.221(B)(1), which prohibits the disclosure of records that identify or could reasonably lead to the identification of certain persons participating in activities relating to lethal-injection drugs. *Id*. at ¶ 4-5.

{¶ 4} We granted Hogan Lovells's requested writ in part, ordering DRC to produce redacted copies of four pieces of correspondence that DRC previously had withheld in their entirety. *Hogan Lovells*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, at ¶ 24. But we denied the writ concerning other records, either because protected information was "inextricably intertwined," *id*. at ¶ 24, with the remainder of the information in the record or because DRC had created or received the records after Hogan Lovells had made its request. *Id*. at ¶ 24, 30, 47. We determined that

Hogan Lovells was entitled to an award of court costs and attorney fees. *Id*. at ¶ 46. We did not award statutory damages, however, because Hogan Lovells had not transmitted its request in a qualifying manner under the applicable version of R.C. 149.43(C)(2). *Id*. at ¶ 35.

{¶ 5} In July 2019, Hogan Lovells made another request for records relating to DRC's plans for carrying out executions by lethal injection. Hogan Lovells sent the request by e-mail to DRC's general public-information address, with "Ohio public records request" written in the subject line. This e-mail request was similar to the one Hogan Lovells had made in 2016 and sought 16 specific records that postdated the first request. Hogan Lovells brought this action in November 2019, after DRC had failed to acknowledge or respond to the request for more than three months. In addition to the records, Hogan Lovells seeks awards of statutory damages, attorney fees, and court costs.

{¶ 6} Four days after Hogan Lovells filed its complaint, DRC responded to the records request. Although DRC provided more than 120 pages of documents, it asserted that other documents were exempt from disclosure. Two specific requests— Nos. 11 and 16—are now at issue.

{¶ 7} In request No. 11, Hogan Lovells asked for correspondence between DRC and any other party from January 1, 2019, to July 19, 2019, "regarding any considered, proposed, or current execution protocols, regulations, guidelines, checklists, notes, or other documents that instruct or direct the carrying out of an execution." DRC produced a policy that establishes guidelines for carrying out executions. That policy is labeled "01-COM-11" and is dated as being effective October 7, 2016. But DRC withheld four other responsive documents from Hogan Lovells's request No. 11: (1) a summary of execution-protocol options prepared by DRC's chief counsel, (2) a May 16, 2019 e-mail and attached document sent by DRC's chief counsel to two DRC employees, (3) a May 21, 2019 e-mail and attached document sent by a DRC employee to DRC's chief counsel, and (4) a June 11, 2019

e-mail and attached document sent by DRC's chief counsel to the governor's chief counsel. DRC asserted that the withheld records were protected under the attorney-client and work-product privileges, and it noted that a federal court, in a case challenging Ohio's execution protocol, had found that those records were privileged.

{¶ 8} In request No. 16, Hogan Lovells asked for "[r]ecords pertaining to training activities or exercises related to execution procedures or protocol from January 1, 2019 through [July 19, 2019], including any and all records pertaining to any substances used during the training exercises and including any reports, evaluations, or other documents produced pursuant to such trainings." In response to that request, DRC produced training logs, training forms, agendas for planning and status meetings, and execution-team training schedules. But DRC withheld records of trainings or exercises conducted for the execution of specific inmates. DRC asserted that those records were exempt under R.C. 5120.21(F), which states that "records of inmates" generally "shall not be considered public records."

{¶ 9} After DRC filed its answer to Hogan Lovells's complaint, we granted an alternative writ and ordered the parties to submit evidence and file briefs in accordance with S.Ct.Prac.R. 12.05. 158 Ohio St.3d 1480, 2020-Ohio-1487, 143 N.E.3d 516. Pursuant to this court's subsequent order, DRC filed under seal for in camera inspection unredacted copies of all the records that it had withheld in response to Hogan Lovell's request Nos. 11 and 16. 159 Ohio St.3d 1467, 2020-Ohio-3884, 150 N.E.3d 121.

## II. ANALYSIS

{¶ 10} R.C. 149.43(B)(1) requires a public office, on request, to make public records available for inspection within a reasonable period of time. A person denied access to public records may seek to compel their production in a mandamus action. R.C. 149.43(C)(1)(b). To prevail, the requester must establish by clear and convincing evidence a clear legal right to the records and a corresponding clear legal duty on the part of the respondent to provide them. *State ex rel. Am. Civ. Liberties*

*Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 22-24; *State ex rel. Cincinnati Enquirer v. Deters*, 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 19. When a public office withholds responsive records, it has the burden of proving that they are statutorily exempted from disclosure. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10.

### A. *Hogan Lovells's claim is not moot*

{¶ 11} DRC argues that this case is moot because it has provided all nonexempt records responsive to Hogan Lovells's request. But as we discuss below, questions remain about whether DRC has properly withheld records (or portions of records) based on claimed statutory exemptions. And even if Hogan Lovells is not entitled to additional records, its requests for awards of statutory damages, attorney fees, and court costs are not moot. Because these matters are still in dispute, we must address the merits of Hogan Lovells's claim.

### B. *Request No. 11*

{¶ 12} After learning that DRC had withheld four records in response to request No. 11 based on claims of attorney-client and work-product privilege, Hogan Lovells demanded that DRC produce copies of those records with any privileged information redacted. DRC eventually acceded to Hogan Lovells's demand by providing copies that were almost entirely redacted. The dispute concerning request No. 11 now centers on whether DRC's initial refusal to provide the records was proper and whether DRC's later redaction of the records was too extensive.

{¶ 13} Hogan Lovells does not squarely challenge DRC's claim that the four records, at least to some extent, are covered by the attorney-client or attorney-work-product privilege. It is well established that records covered by the attorney-client privilege are not public records. *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 26 (applying R.C. 149.43(A)(1)(v)). And under R.C. 149.43(A)(1)(g), records constituting attorney work product may be

exempt from disclosure as "[t]rial preparation records." *See Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, ¶ 55 (stating that the work-product privilege protects "the attorney's mental processes in preparation of litigation"). Thus, to the extent that the attorney-client privilege or the trial-preparation exemption applies, the withheld records are exempt from disclosure.

{¶ 14} In demanding that DRC disclose more of the records with fewer redactions, Hogan Lovells relies on R.C. 149.43(B)(1), which provides that "[i]f a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt." DRC, in turn, relies on cases in which we have suggested that a public office may completely withhold a record when it contains privileged information that is "inextricably intertwined" with nonprivileged information. *See, e.g.*, *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 29; *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 448, 732 N.E.2d 969 (2000). In other words, DRC argues that the four records at issue are privileged in their entirety.

{¶ 15} Because Hogan Lovells challenges the extent to which DRC has withheld records responsive to request No. 11, we must individually scrutinize the records to determine whether they contain nonprivileged information. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 526 N.E.2d 786 (1988), paragraph four of the syllabus.

### 1. Chief counsel's summary of protocol options

{¶ 16} The first withheld record is a three-page document authored by DRC's chief counsel that identifies numerous drugs and combinations of drugs that could be used in carrying out lethal injections. The document describes drug protocols used by other states and identifies advantages of implementing certain alternatives. When

DRC produced this document to Hogan Lovells, it was completely redacted except for notations of "ATTORNEY WORK PRODUCT," "PRIVILEGED AND CONFIDENTIAL," and "NOT FOR PUBLIC RELEASE" on each page. (Capitalization sic.)

**{¶ 17}** The attorney-client privilege applies to communication that facilitates an attorney's provision of legal services or advice to a client. *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 27. The privilege is not restricted just to the provision of pure legal advice, but also covers the attorney's own factual investigation when that investigation is "incident to or related to any legal advice" the attorney gives. *Id*. at ¶ 29. The chief counsel's protocol-options summary meets this standard, as it communicates information and advice to DRC concerning how DRC may legally carry out executions. We hold, therefore, that DRC properly withheld the protocol-options summary under the attorney-client privilege.

### 2. May 16, 2019 e-mail and attachment

**{¶ 18}** The second withheld record consists of a one-page e-mail sent by DRC's chief counsel to two DRC employees, with a five-page document attached. The five-page document is similar to the protocol-options summary discussed above: it lists numerous drugs or combinations of drugs that could be used to carry out lethal injections, identifies drugs that are used in other states, and discusses various factors that could be relevant to the possible use of different drugs. It also refers to expert-witness testimony related to these issues. DRC completely redacted this document, except for notations of "ATTORNEY WORK PRODUCT," "PRIVILEGED AND CONFIDENTIAL," and "NOT FOR PUBLIC RELEASE" on each page. (Capitalization sic.) Just as with the protocol-options summary, we hold that DRC properly withheld the five-page attachment to the May 16, 2019 e-mail under the attorney-client privilege.

**{¶ 19}** Hogan Lovells argues, however, that DRC improperly redacted nonprivileged information in the May 16, 2019 e-mail itself. Specifically, Hogan Lovells questions DRC's redaction of part of the document's name in the e-mail's header, arguing that "[a] single line description of a document cannot by any reasonable stretch of the imagination constitute legal advice."

**{¶ 20}** To support its claim, Hogan Lovells relies on *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, a case involving a request for itemized billing statements for attorney services. In *Anderson*, we recognized that "the narrative portions of itemized attorney-billing statements containing descriptions of legal services performed by counsel for a client are protected by the attorney-client privilege." *Id*. at ¶ 13. But we held that other parts of billing statements—"e.g., the general title of the matter being handled, the dates the services were performed, and the hours, rate, and money charged for the services"—are nonexempt and must be disclosed under R.C. 149.43(B)(1). *Id*. at ¶ 15.

**{¶ 21}** There is an important difference between the records at issue in *Anderson* and the record at issue here. *Anderson* involved attorney-billing statements that *described* legal services—they were secondary references to already-completed legal work. The billing statements were not themselves attorney-client communications. Production of the billing statements with redactions was appropriate because parts of the statements did not disclose protected information. Here, in contrast, the e-mail is the attorney-client communication itself. The privilege applies to the whole e-mail because the entire document constitutes communication between an attorney and a client that facilitated the attorney's provision of legal services or advice. *See Toledo Blade*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, at ¶ 27. There was no need for DRC to dissect the e-mail to determine whether an isolated word or phrase was not fundamental to the chief counsel's provision of legal services. *See id.* at ¶ 26. We therefore hold that DRC properly

withheld the May 16, 2019 e-mail and its attachment under the attorney-client privilege.

### 3. May 21, 2019 e-mail and attachment

{¶ 22} The next withheld record consists of an e-mail sent by a DRC employee to DRC's chief counsel, with a three-page document attached. There is no message in the e-mail. The three-page document makes recommendations about how Ohio might satisfy concerns raised by expert witnesses who had testified in the federal-court litigation involving Ohio's execution protocol, and it notes that the use of a particular drug withstood a legal challenge in another state. Except for the heading "Ohio Lethal Injection Protocol Considerations & Recommendations," which appears at the beginning of the three-page document, the document that DRC gave to Hogan Lovells is completely redacted.

{¶ 23} The attorney-client privilege extends to communication that facilitates an attorney's provision of legal services or advice, not just to discrete lines offering a legal opinion. *See Toledo Blade* at ¶ 27. Hogan Lovells does not address why it believes that DRC improperly withheld and/or redacted this record. Although the author of the e-mail does not expressly ask for the chief counsel's legal advice, the communication clearly is part of an ongoing discussion within DRC about Ohio's effort to develop an execution-drug protocol that withstands legal scrutiny. Therefore, for the reasons addressed in the previous two sections, we hold that DRC properly withheld the May 21, 2019 e-mail and its attachment under the attorney-client privilege.

### 4. June 11, 2019 e-mail and attachment

{¶ 24} This record consists of a one-page e-mail sent by DRC's chief counsel to the governor's chief counsel, with a 29-page document attached. There is no message in the e-mail.

{¶ 25} Hogan Lovells argues that DRC improperly withheld and redacted the 29-page document, which is a proposed draft of an updated version of 01-COM-11

(the DRC policy establishing guidelines for carrying out executions). The draft includes numerous additions and deletions to 01-COM-11 that were suggested by DRC's chief counsel, but some sections and pages were left unchanged. If finalized and approved, the draft would supersede the version of 01-COM-11 that DRC already provided Hogan Lovells. Except for information identifying the document as a draft version of 01-COM-11 and numerous notations of "ATTORNEY WORK PRODUCT," "PRIVILEGED AND CONFIDENTIAL," and "DELIBERATIVE PROCESS PRIVILEGED [capitalization sic]," DRC completely redacted the 29-page document before producing it to Hogan Lovells.

{¶ 26} Hogan Lovells concedes that any suggested changes to 01-COM-11 made by DRC's chief counsel are protected by the attorney-client privilege, but it argues that the remaining portions of the draft are not protected. In particular, Hogan Lovells contends that the document's subheadings and a section defining terms are not privileged.

{¶ 27} Hogan Lovells argues that the document is protected from disclosure only to the extent that it transmits legal advice. This view of the attorney-client privilege is too narrow. The privilege, again, extends to communication that facilitates an attorney's provision of legal services or advice, not just to discrete lines offering a legal opinion. *See Toledo Blade*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, at ¶ 27. Moreover, there is communicative value in what DRC's chief counsel changed in 01-COM-11 *and* in what he left alone.

{¶ 28} Hogan Lovells also points out that a record is not exempt from disclosure under R.C. 149.43(B)(1) simply because it is in draft form. *See Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20. Hogan Lovells argues that DRC's approach would allow a public office to withhold an entire draft of a document simply by having an attorney review it. But DRC's chief counsel did not simply review the draft policy; he suggested numerous substantive changes. It is

the attorney's communication of legal advice—not the document's draft form—that protects the entire document from disclosure.

{¶ 29} For these reasons, we hold that DRC properly withheld the June 11, 2019 e-mail and its attachment under the attorney-client privilege. Hogan Lovells is not entitled to a writ of mandamus concerning request No. 11.

### C. Request No. 16

{¶ 30} In request No. 16, Hogan Lovells asked for "[r]ecords pertaining to training activities or exercises related to execution procedures or protocol from January 1, 2019 through [July 19, 2019], including any and all records pertaining to any substances used during the training exercises and including any reports, evaluations, or other documents produced pursuant to such trainings." DRC submitted for in camera inspection 210 pages of records that it withheld in response to request No. 16. DRC argues that the withheld records are exempt as "records of inmates" under R.C. 5120.21(F). Hogan Lovells argues that the exemption does not apply.

### 1. Laches

{¶ 31} As an initial matter, DRC argues that any claim concerning request No. 16 is barred under the doctrine of laches because Hogan Lovells failed to previously object to DRC's decision to withhold the records under R.C. 5120.21(F). DRC waived its right to assert laches, however, because it did not raise laches as an affirmative defense in its answer to the complaint. *See* Civ.R. 8(C).

### 2. Summary of the records

{¶ 32} All the records withheld in response to request No. 16 relate to activities that occurred in January 2019, when DRC was preparing for the anticipated execution of Warren Henness, who had been scheduled to be executed in February 2019. On January 25, 2019, the governor issued a warrant of reprieve delaying Henness's execution.

{¶ 33} The withheld records are divided into three parts. The first part consists of reports and memoranda that document, for example, physical and mental-health assessments of Henness and the relocation of Henness to different areas within the prison that he was being housed. The second part of the withheld records consists of "activity logs" and "incident briefings."

{¶ 34} The majority of the records in the third part of the withheld records are similar to records that DRC already has provided Hogan Lovells. In response to request No. 16, DRC gave Hogan Lovells records relating to execution-training activities that took place in June and July 2019. Those records were unrelated to the anticipated execution of any particular inmate. The withheld records consist of the same form documents that were used in June and July 2019, but they document four rehearsals that were conducted in anticipation of Henness's February 2019 execution. Although many of the withheld records include Henness's name, they do not appear to provide any information about Henness himself.

### 3. R.C. 5120.21(F)

{¶ 35} DRC argues that the above records are exempt as "records of inmates" under R.C. 5120.21(F), which provides:

> Except as otherwise provided in division (C) of this section, records of inmates committed to [DRC] as well as records of persons under the supervision of the adult parole authority shall not be considered public records as defined in section 149.43 of the Revised Code.

R.C. 5120.21(C) requires DRC to compile and maintain medical records for every inmate, and it provides a way for those records to be inspected by an inmate's attorney or physician.

{¶ 36} The term "records of inmates" is not defined by statute, so we must determine its plain and ordinary meaning. *Rhodes v. New Philadelphia*, 129 Ohio

12

St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17. Because the definitions of "records" and "inmates" are not in question, the meaning of "records of inmates" turns on "of," a word of many uses. *See Webster's Third New International Dictionary* 1565 (1993) (listing 20 senses and definitions). "Of," for example, may be used as a function word "after a noun indicating the maker" or "indicating a possessive relationship." *Id.* But these and other definitions do not fit this context. Here, "of" simply means "relating to," "with reference to," or "about." *Id.* So in looking at R.C. 5120.21(F) alone, it is evident that the General Assembly broadly exempted records that relate or refer to inmates.

{¶ 37} Hogan Lovells argues that this expansive understanding of "records of inmates" does not fit within the context of R.C. 5120.21 as a whole. *See* R.C. 1.42 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage"); *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 8-10. Hogan Lovells points to three other divisions within the statute—R.C. 5120.21(A), (C), and (D)—that it says limit the scope of R.C. 5120.21(F). R.C. 5120.21(A) requires DRC to create a record for each inmate containing certain facts and information about the inmate (name, age, condition, etc.). R.C. 5120.21(C) requires DRC to compile a separate medical record for every inmate. And R.C. 5120.21(D) describes seven categories of records maintained by DRC, five of which likely would contain information about specific inmates. *See* R.C. 5120.21(D)(3) (statements by inmate informants); R.C. 5120.21(D)(4) (records from the department of youth services pertaining to children in its custody); R.C. 5120.21(D)(5) (information from crime victims); R.C. 5120.21(D)(6) (information pertaining to groups posing a security threat); R.C. 5120.21(D)(7) (recorded inmate telephone conversations involving nonprivileged communications). Hogan Lovells argues that "records of inmates" refers to only the records described in R.C. 5120.21(A), (C), and (D).

{¶ 38} Hogan Lovells's argument fails with respect to R.C. 5120.21(A) and (D) because the records described in those divisions are already exempt from disclosure. R.C. 5120.21(A) itself provides that the records created pursuant to that division shall be "accessible only to [DRC's] employees, except by the consent of the department or the order of the judge of a court of record, and except as provided in division (C)." *See State ex rel. Harris v. Rhodes*, 54 Ohio St.2d 41, 42, 374 N.E.2d 641 (1978) (holding that this language exempts records from disclosure under Ohio's Public Records Act). R.C. 5120.21(D) similarly provides that the records identified in that division shall be kept "confidential and accessible only to its employees, except by the consent of the department or the order of a judge of a court of record." Therefore, for R.C. 5120.21(F)'s exemption to have significance, "records of inmates" must consist of more than the records described in R.C. 5120.21(A) and (D).

{¶ 39} Under Hogan Lovells's argument, that would leave the medical records described in R.C. 5120.21(C) as "records of inmates" under R.C. 5120.21(F). But R.C. 5120.21(A) provides that the records kept under that division shall be "accessible only to its employees, * * * *except as provided in division (C) of this section*." (Emphasis added.) This means that an inmate's medical records, as described in R.C. 5120.21(C), must be a subset of the records described in R.C. 5120.21(A). So for the reason just discussed regarding R.C. 5120.21(A), "records of inmates" must consist of more than just inmate medical records. Hogan Lovells has not shown that the statutory context requires a narrow meaning of "records of inmates."

{¶ 40} Finally, Hogan Lovells that statutory exemptions to Ohio's Public Records Act must be construed strictly against a public office. *See State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.*, 78 Ohio St.3d 518, 519, 678 N.E.2d 1388 (1997). But here, because there is no ambiguity as to the term "records of inmates," there is no need to resort to that rule of construction.

14

{¶ 41} The question before this court is whether the records DRC withheld in response to request No. 16 are records that relate or refer to an inmate. We hold that the withheld records fit within that definition because they provide specific information about Henness, document the activities that DRC undertook in preparing to execute him, and refer to facts, circumstances, or activities specifically related to Henness.

{¶ 42} Hogan Lovells is not entitled to a writ of mandamus concerning request No. 16.

### D. Statutory damages

{¶ 43} "If a request meets the form and transmission requirements of R.C. 149.43(C)(2), 'the requester shall be entitled to' statutory damages 'if a court determines that the public office or the person responsible for public records failed to comply with an obligation' under R.C. 149.43(B)." *State ex rel. Ware v. Giavasis*, 160 Ohio St.3d 383, 2020-Ohio-3700, 157 N.E.3d 710, ¶ 10, quoting R.C. 149.43(C)(2). Hogan Lovells satisfied the form and transmission requirements, because it sent its request by e-mail, which was a qualifying form of transmission under the version of R.C. 149.43(C)(2) in effect when it made the request. *See* 2018 Sub.H.B. No. 312.

{¶ 44} Although DRC ultimately produced responsive records, it did not do so until November 8, 2019, four business days after Hogan Lovells filed its complaint. DRC acknowledges that that production was not made within a reasonable period of time, as required under R.C. 149.43(B). Thus, Hogan Lovells is entitled to statutory damages, even though it is not entitled to a writ of mandamus. *See State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 22.

{¶ 45} R.C. 149.43(C)(2) provides:

> The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office or person responsible for the requested public records failed to comply with an obligation in accordance with division (B) of this section, beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars.

Because statutory damages accrue at $100 per day "beginning with the day on which the requester files a mandamus action," *id.*, Hogan Lovells is entitled to $500 in statutory damages.

### E. Attorney fees

{¶ 46} Even though a writ of mandamus is not appropriate in this case, Hogan Lovells still could be entitled to an award of attorney fees. Under R.C. 149.43(C)(3)(b)(i), we may award fees upon determining that DRC "failed to respond affirmatively or negatively to the public records request in accordance with the time allowed under division (B) of this section." R.C. 149.43(B)(1) required DRC to "promptly" prepare the responsive records and make copies available "within a reasonable period of time."

{¶ 47} Although DRC concedes that its production of responsive records was not timely, it argues that we should decline to award attorney fees pursuant to R.C. 149.43(C)(4)(d), which provides we may reduce an attorney-fee award if we "determine[] that, given the factual circumstances involved with the specific public records request, an alternative means should have been pursued to more effectively and efficiently resolve the dispute that was subject to the mandamus action." DRC argues that given the history between the parties, it would have been more effective and efficient for Hogan Lovells to follow up on its request with DRC or DRC's counsel before filing a mandamus action.

**{¶ 48}** We will determine whether Hogan Lovells is entitled to an award of its attorney fees and whether it would be appropriate to reduce any such award after Hogan Lovells submits evidence supporting the amount and reasonableness of its fees. Hogan Lovells's application shall be limited to the fees it incurred before DRC provided the nonexempt public records on November 8, 2019, plus the fees it incurs in proving the reasonableness and amount of its fees and in otherwise litigating its entitlement to fees. R.C. 149.43(C)(4).

### F. Court costs

**{¶ 49}** Because we are not issuing a writ of mandamus, Hogan Lovells is entitled to an award of its court costs only if we determine that DRC acted in bad faith by voluntarily producing the responsive public records to Hogan Lovells after Hogan Lovells commenced this action. *See* R.C. 149.43(C)(3)(a)(ii) and (C)(3)(b)(iii). Hogan Lovells argues that R.C. 149.43(C)(3)(b)(iii) creates a presumption of bad faith in this situation, but in fact, R.C. 149.43(C)(3)(b)(iii) states that "[t]his division shall *not* be construed as creating a presumption that the public office or the person responsible for the public records acted in bad faith." (Emphasis added.) Because Hogan Lovells has not shown that DRC—though having been dilatory—acted in bad faith, we deny the request for an award of court costs.

### III. CONCLUSION

**{¶ 50}** We deny Hogan Lovells's request for a writ of mandamus but award statutory damages in the amount of $500. Hogan Lovells shall file an itemized application for attorney fees. Hogan Lovells's request for an award of court costs is denied.

Writ denied.

O'CONNOR, C.J., and FISCHER and BRUNNER, JJ., concur.

DONNELLY, J., concurs in judgment only.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE and STEWART, JJ.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 51} I concur in the majority's holding that certain records that were requested by relators, Hogan Lovells, U.S., L.L.P., and Elizabeth Och (collectively, "Hogan Lovells") are exempt from disclosure because those records are protected by the attorney-client privilege (Hogan Lovells's request No. 11). I part ways with the majority, however, with respect to its holding that other records sought by Hogan Lovells in its request No. 16 are also exempt from disclosure.

{¶ 52} In request No. 16, Hogan Lovells asked respondent, the Ohio Department of Rehabilitation and Correction ("DRC") to produce "[r]ecords pertaining to training activities or exercises related to execution procedures or protocol from January 1, 2019 through [July 19, 2019], including any and all records pertaining to any substances used during the training exercises and including any reports, evaluations, or other documents produced pursuant to such trainings." DRC produced some relevant records pursuant to that request but withheld other responsive records that contained the name of an inmate, Warren Henness, asserting that those records were exempt from disclosure under R.C. 5120.21(F), which states that "records of inmates * * * shall not be considered public records." The lead opinion agrees with DRC's argument and interpretation of R.C. 5120.21(F). But in agreeing with DRC that the exemption in R.C. 5120.21(F) applies, the lead opinion broadly interprets the term "records of inmates" beyond the plain language of the statute and gives the term a meaning that is contrary to the statute's design. The lead opinion's interpretation also contradicts the definition of "public records" in Ohio Adm.Code 5120-9-49 and our own caselaw regarding what constitutes "inmate records."

{¶ 53} The potential impact of today's decision is far-reaching. The lead opinion concludes that any record which in any way relates to an inmate is not a public record, shielding such documents from Ohio's Public Records Act. Arguably

18

that would include those records documenting the treatment of or use of force against an inmate in any of Ohio's prisons. If it is true that "the way a society treats those who have transgressed against it is evidence of the essential character of that society," *Hudson v. Palmer*, 468 U.S. 517, 523-524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), then the lack of access to records relating to inmates would leave people in the dark regarding an important measure of society's character.

{¶ 54} Because the term "records of inmates" as used in R.C. 5120.21(F) applies only to the specific records referred to in R.C. 5120.21, I dissent in part and would grant in part the writ sought by Hogan Lovells. I would also grant Hogan Lovells an award of court costs, statutory damages in the amount of $1,000, and reasonable attorney fees.

*The plain meaning of R.C. 5120.21*

{¶ 55} I agree with the lead opinion that determining the plain and ordinary meaning of the term "records of inmates" is the key to resolving this case. But the lead opinion does not focus on the language and design of R.C. 5120.21 as a whole in determining the term's plain and ordinary meaning. Instead, the lead opinion states that the meaning of the term "records of inmates" turns on the meaning of the word "of," which the lead opinion refers to as "a word of many uses." Lead opinion at ¶ 36. However, the lead opinion ignores those many uses and quickly settles, without analysis, on the following definition of that word for purposes of R.C. 5120.21(F): "Here, 'of' simply means 'relating to,' 'with reference to,' or 'about,' " lead opinion at ¶ 36, quoting *Webster's Third New International Dictionary* 1565 (1993). By settling on "relating to" from among the different meanings of the word "of," the lead opinion disregards the difference between records that are *about* someone as opposed to records that merely *relate* to someone. As a result, according to the lead opinion, "records of inmates" means any records relating to inmates. I disagree.

{¶ 56} R.C. 5120.21(F) is just one part of R.C. 5120.21. R.C. 5120.21(F) states: "Except as otherwise provided in division (C) of this section, records of inmates committed to [DRC] * * * shall not be considered public records as defined in section 149.43 [Ohio's Public Records Act] of the Revised Code." In construing a statute, we do not ask "what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. When a term is not defined in a statute, we use the term's plain and ordinary meaning. *Brecksville v. Cook*, 75 Ohio St.3d 53, 56, 661 N.E.2d 706 (1996). And rather than pick an arbitrary and inconclusive dictionary definition of a particular word, "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). Reading R.C. 5120.21 as a whole, rather than considering R.C. 5120.21(F) in isolation, affords the context necessary to ascertain the plain meaning of R.C. 5120.21(F).

{¶ 57} When considering the particular language of R.C. 5120.21 as a whole, and R.C. 5120.21 in its proper context, the term "records of inmates" is unambiguous: it refers to the records mentioned in R.C. 5120.21 containing an inmate's personal information.

{¶ 58} When R.C. 5120.21 is read as a whole, it demonstrates that the exemption under R.C. 5120.21(F) does not apply to every record that simply contains an inmate's name or relates generally to inmates; instead, the exemption applies to the records concerning inmates that are described within the rest of R.C. 5120.21.

{¶ 59} R.C. 5120.21 concerns personal information of inmates that the General Assembly compels DRC to compile or hold. R.C. 5120.21 (1) creates the duty for DRC to create certain records, (2) grants DRC the discretion to consent to

release certain records, (3) states that although some records may be subject to release with DRC's consent, they are not public records and those records must still remain confidential, and (4) allows DRC to release certain records to other governmental entities but limits how those records are used and ensures that those records remain confidential after having been transferred and exempts those records from being public records

{¶ 60} To start, R.C. 5120.21(A) requires DRC to keep records containing certain personal information about inmates, including "the name, residence, sex, age, nativity, occupation, condition, and date of entrance or commitment of every inmate in the several institutions governed by it." The records must also include "the date, cause, and terms of discharge and the condition of such person at the time of leaving" along with information regarding the inmate's transfers to other institutions. *Id*. Also, if an inmate has died within an Ohio institution, DRC must give the date that the inmate died and the cause of his or her death. *Id*. R.C. 5120.21(A) requires DRC to keep those records "in its office" and instructs that those records are accessible only to DRC's employees, except by the consent of DRC or the order of a judge. But as discussed below, DRC's discretion regarding releasing those records does not extend to medical records—DRC may release an inmate's medical records to certain professionals but only upon an inmate's written request, R.C. 5120.21(C)(2).

{¶ 61} R.C. 5120.21(B) mandates "the managing officer" to make a special report and provide it to DRC within 24 hours of an accident, injury, or peculiar death that befalls an inmate.

{¶ 62} R.C. 5120.21(C) addresses medical records held by DRC, requiring it to compile and maintain a separate medical record for every inmate and to keep those records "apart from and independently of any other record pertaining to the inmate," R.C. 5120.21(C)(2). R.C. 5120.21(C)(2) also limits access to an inmate's medical records to either an attorney or a physician who is designated in writing by

the inmate, and that type of access is limited to once every 12 months. R.C. 5120.21(C) makes clear that medical records must be released upon the inmate's request—the release of an inmate's medical record is not dependent on DRC's consent or on a court issuing an order like the other records listed in R.C. 5120.21(A) or (D).

{¶ 63} R.C. 5120.21(D) lists other specific records that DRC must keep confidential and "accessible only to its employees," including statements made by inmate informants, R.C. 5120.21(D)(3), records maintained by the Department of Youth Services ("DYS") that are released to DRC, R.C. 5120.21(D)(4), victim-impact statements, R.C. 5120.21(D)(5), and conversations that have been recorded from the monitored inmate telephones and involve nonprivileged communications, R.C. 5120.21(D)(7). Like the records in R.C. 5120.21(A), the types of records listed in R.C. 5120.21(D) must be kept confidential by DRC's employees "except by the consent of [DRC] or the order of a judge of a court of record." *Id.*

{¶ 64} R.C. 5120.21(E) allows DRC to release "inmate records" to DYS or to a court of record, and "[DYS] or the court of record may use those records for the limited purpose of carrying out the duties of [DYS] or the court of record," but those records are exempt from being public records. *Id.* The lead opinion overemphasizes the meaning of the word "of" and misses an important aspect of R.C. 5120.21(E) by failing to consider the context of R.C. 5120.21 and how the subdivisions of that statute work together. Indeed, R.C. 5120.21(E) refers to "inmate records," not "records of inmates," and there is no reason to believe that R.C. 5120.21(E) is referring to different categories of records than those referred to in R.C. 5120.21(F). Since R.C. 5120.21 pertains to both "records of inmates" and "inmate records" by virtue of its subdivisions, the lead opinion's reliance on the word "of" to determine the meaning of the term "records of inmates" is erroneous.

{¶ 65} R.C. 5120.21(E) states that if DRC releases inmate records to DYS or a court, those records "shall remain confidential and shall not be considered

public records as defined in section 149.43 of the Revised Code." In other words, if an inmate's records are transferred to an approved entity other than DRC, those records remain confidential and are not public records. R.C. 149.43(A)(1)(k) emphasizes that point; it excepts from the definition of "public record" "[i]nmate records released by [DRC] to [DYS] or a court of record pursuant to division (E) of section 5120.21 of the Revised Code."

{¶ 66} R.C. 5120.21(F) provides similar protection for records remaining under the control of DRC. Throughout R.C. 5120.21, the General Assembly requires DRC to compile and/or keep specific records pertaining to inmates. The term "records of inmates" used in R.C. 5120.21(F) refers to those records that R.C. 5120.21 requires DRC to compile and/or keep. R.C. 5120.21(F) ensures that those particular records, which contain personal or confidential information, are not considered public records.

{¶ 67} Construing the language of R.C. 5120.21 as a whole and reading it in context, the statement in R.C. 5120.21(F) that "records of inmates committed to [DRC] * * * shall not be considered public records as defined in [Ohio's Public Records Act]" means that the inmate records referred to in the rest of R.C. 5120.21 are not public records. R.C. 5120.21(F) makes an inmate's medical records under R.C. 5120.21(C)(2) an exception to that statement. But as for the other records in R.C. 5120.21, R.C. 5120.21(F) clarifies that even though DRC may consent to their release, DRC's power to release those records does not make them public records.

{¶ 68} The lead opinion takes a far more expansive view of R.C. 5120.21(F), holding that any records *relating* to inmates are exempt from disclosure to the public by virtue of R.C. 5120.21(F). In fact, the lead opinion determines that R.C. 5120.21(F) applies *only* to records that are *not* mentioned in R.C. 5120.21. The lead opinion determines that R.C. 5120.21(F) must refer to some records other than the records in R.C. 5120.21(A), (C), and (D) because those records are "already exempt from disclosure." Lead opinion at ¶ 38. But the lead opinion

misses important attributes of the statute. First, the lead opinion ignores the fact that R.C. 5120.21(B) includes no mention of confidentiality; therefore, those reports are not "already exempt from disclosure" without R.C. 5120.21(F).

{¶ 69} Second, pursuant to R.C. 149.43(A)(1)(v), the definition of a "public record" does not include "[r]ecords the release of which is prohibited by state or federal law." At first blush, it may appear that the records described in R.C. 5120.21(A) and (D) fit within R.C. 149.43(A)(1)(v)'s exception to the definition of public records. The records described in R.C. 5120.21(A) and R.C. 5120.21(D) are accessible only to DRC's employees. However, although the records described in R.C. 5120.21(A) and (D) are to be kept confidential, the statutes do not actually *prohibit* the release of those records. Both R.C. 5120.21(A) and (D) contain the caveat that the described records are to be kept confidential "*except by the consent of [DRC]* or the order of a judge of a court of record." (Emphasis added.) That exception leaves room for circumstances to exist in which those records may be released. Indeed, the records may be released if DRC simply wants to release them. Therefore, the records described in R.C. 5120.21(A) and (D) do not fit under the public-record exception as stated in R.C. 149.43(A)(1)(v). But those records are still excepted from the definition of public records by R.C. 5120.21(F). Because of that, the lead opinion's argument that "for R.C. 5120.21(F)'s exemption to have significance, 'records of inmates' must consist of more than the records described in R.C. 5120.21(A) and (D)," lead opinion at ¶ 38, rings hollow. R.C. 5120.21(F) applies to the accidental-injury and peculiar-death reports required by R.C. 5120.21(B). And R.C. 5120.21(F) makes clear that despite the fact that records of inmates are not completely confidential under R.C. 5120.21(A) and (D), they are not public records. Moreover, R.C. 5120.21(F) clarifies that although inmates' medical records are subject to being released on a limited basis, those records still are not public records.

24

{¶ 70} Therefore, I disagree with the majority's conclusion that the exemption contained in R.C. 5120.21(F) applies only to the records that are not listed in R.C. 5120.21.

*Hiding elephants in mouseholes*

{¶ 71} Under the lead opinion's interpretation of R.C. 5120.21(F), any record that has anything at all to do with an inmate is not a public record. That interpretation would create an enormous exemption to Ohio's public-records law stuck into a narrow statute dealing for the most part with records containing inmates' personal information. The General Assembly could not have meant to shield from public view the majority of DRC's records when it used the term "records of inmates" in R.C. 2150.21(F). And the General Assembly's use of that term does not clearly establish that most of DRC's records that relate to inmates are exempted from Ohio's Public Records Act. Logically, if such an exemption was intended, it would be a part of a broader set of statutes about DRC. The legislature "does not * * * hide elephants in mouseholes." *See Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). Indeed, an exemption that is so expansive that it includes DRC's records regarding its activities, procedures, and policies would be clearly stated and not shoehorned into an exemption regarding inmates' personal information.

*The lead opinion's interpretation is contrary to our jurisprudence and*
*the Ohio Administrative Code*

{¶ 72} Further, the lead opinion's reasoning is contrary to our own caselaw. If R.C. 5120.21(F) applies to all DRC's records relating to inmates, then use-of-force reports would be exempted from disclosure as not being public records. But our own jurisprudence demonstrates that use-of-force reports *are* public records. In *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, we granted an inmate a writ of mandamus compelling DRC to release security-camera footage of a use-of-force incident at Marion Correctional

Institution, which clearly involved an inmate. The majority's holding here contradicts that earlier decision.

{¶ 73} If R.C. 5120.21(F) applies to any record relating to inmates, then any records regarding DRC's supply of drugs for its use in lethal injections would not be a public record, since lethal injections relate to inmates. But in yet another earlier case, which involved the same parties as in this case, *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.*, 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 2, 48, we ordered DRC to provide certain records, with redactions, relating to DRC's supply of drugs for its use in lethal injections. And in *State ex rel. McDougald v. Greene*, 157 Ohio St.3d 315, 2019-Ohio-3309, 136 N.E.3d 453, we granted a peremptory writ of mandamus ordering the public-records custodian for the Southern Ohio Correctional Facility to provide an inmate with a copy of the facility's legal-mail log for a specific date. This record is necessarily related to inmates, as it documents the legal mail that inmates receive on a daily basis.

{¶ 74} Moreover, the lead opinion's interpretation of the meaning of "records of inmates" conflicts with the Ohio Administrative Code's definition of what constitutes a public record. Ohio Adm.Code 5120-9-49(C)(1) states that the following are not public records: "[r]ecords, the release of which is prohibited by state law (e.g., all records referred to in section 5120.21 of the Revised Code * * *) or federal law." Therefore, the administrative code recognizes "all records referred to in Section 5120.21 of the Revised Code" as a specific group of records that are exempt from the definition of public records; it does not state that "records of inmates" are exempt from the definition of public records. Furthermore, the lead opinion's interpretation of the term "records of inmates," which includes any record relating to an inmate, necessarily exempts records documenting the inmate-discipline process from the definition of public records. However, Ohio Adm.Code 5120-9-49(B)(1) states that "[t]he records of the department that shall be deemed

public records include, but are not limited to * * * [c]harges and decisions in inmate disciplinary cases." Indeed, according to DRC, records regarding an inmate's disciplinary case are public records. This means that DRC does not interpret the term "records of inmates" as broadly as the lead opinion.

*The lead opinion's interpretation is contrary to the purpose of*

*Ohio's Public Records Act*

{¶ 75} " '[T]he purpose of Ohio's Public Records Act, R.C. 149.43, is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy.' " (Brackets added in *Gannett Satellite Information Network, Inc.*) *State ex rel. Gannett Satellite Information Network, Inc. v. Petro*, 80 Ohio St.3d 261, 264, 685 N.E.2d 1223 (1997), quoting *State ex rel. WHIO-TV-7 v. Lowe*, 77 Ohio St.3d 350, 355, 673 N.E.2d 1360 (1997). "Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 16. "Ohio's public-records statutes, 'including those constituting Chapter 149, reinforce the understanding that open access to government [records] is an integral entitlement of the people, to be preserved with vigilance and vigor.' " *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, __ Ohio St.3d __, 2020-Ohio-5371, __ N.E.3d __, ¶ 10, quoting *Kish* at ¶ 17.

{¶ 76} The lead opinion would exempt most of DRC's records from the definition of public records. The treatment of inmates, who are already voiceless to a great extent, would be a governmental secret. Without access to records regarding the treatment of inmates, Ohioans would be left with no evidence of how their government fulfilled one of its essential missions.

{¶ 77} Because in my view R.C. 5120.21(F) applies only to the inmate records mentioned in R.C. 5120.21, it follows that DRC's denial of Hogan

Lovells's request No. 16 based on R.C. 5120.21(F) is proper only if the records sought in that request are the type described in R.C. 5120.21.

*Applying R.C. 5120.21(F) to request No. 16*

{¶ 78} To the extent that DRC claims that the records it has that are responsive to Hogan Lovells's request No. 16 are exempt from disclosure, the only records exempt under R.C. 5120.21(F) are those containing personal information that are described in R.C. 5120.21(A), the reports of an accident or death as discussed in R.C. 5120.21(B), the medical records set forth in R.C. 5120.21(C), and the different categories of records set forth in R.C. 5120.21(D).

{¶ 79} In request No. 16, Hogan Lovells seeks "[r]ecords pertaining to training activities or exercises related to execution procedures or protocol from January 1, 2019 through [July 19, 2019], including any and all records pertaining to any substances used during the training exercises and including any reports, evaluations, or other documents produced pursuant to such trainings." There is not a specific indication excluding such reports in R.C. 5120.21. Hogan Lovells does not seek records about an inmate—i.e., Henness—it seeks records regarding the institutional preparations for the would-be execution of Henness. Therefore, Hogan Lovells is seeking records about DRC, not about an inmate.

{¶ 80} Turning to the requested documents at issue, I would hold that most of the documents withheld by DRC relating to the preparations for the execution of Henness were wrongfully withheld. Those documents are fundamentally concerned with the prison's processes in preparing for an execution and do not include the type of information prohibited from being disclosed by R.C. 5120.21. However, in my view, there are some portions of the records that would be subject to redaction. For instance, medical assessments and psychological reports should be withheld pursuant to R.C. 149.43(A)(1)(a) (excluding medical records from the definition of public records). Additionally, any information concerning employee-identification numbers would merit redaction.

{¶ 81} Still, the majority of the records sought by Hogan Lovells are not exempt under R.C. 5120.21(F), and those documents that contain information that is exempt from R.C. 149.43 could be easily redacted. "If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt." R.C. 149.43(B).

{¶ 82} The bulk of the material that DRC submitted for in camera review in this case regarding request No. 16 concerns institutional activity and should be provided to Hogan Lovells; the exception from the definition of public records in R.C. 5120.21(F) does not apply to those institutional records.

*Court costs, statutory damages, and attorney fees*

{¶ 83} Because I would order DRC to comply with R.C. 149.43(B) and provide Hogan Lovells with the records that it requested in request No. 16, I would grant an award of court costs to Hogan Lovells pursuant to R.C. 149.43(C)(3)(a)(i).

{¶ 84} Moreover, I dissent from the majority's judgment awarding Hogan Lovells only $500 in statutory damages; since more than ten days will have passed from the date on which Hogan Lovells's filed its compliant for a writ of mandamus to the date on which DRC would provide the requested records, I would award Hogan Lovells the maximum amount of statutory damages, $1,000. A court may decline to award statutory damages or may reduce the amount of the award if it finds that (1) based on the public-records law that existed at the time of the alleged conduct that constituted the failure to comply with R.C. 149.43, "a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct * * * did not constitute a failure to comply * * * with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and (2) "a well-informed public office or person responsible for the requested public records reasonably would

believe that the conduct * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b).

{¶ 85} Neither of those reduction factors apply in this case. DRC failed to respond to Hogan Lovells within an acceptable period of time based on an overly expansive interpretation of the term "records of inmates." This decision falls well outside the conduct that a well-informed public office reasonably would believe complies with Ohio's Public Records Act.

{¶ 86} Like the majority, I would award reasonable attorney fees to Hogan Lovells. But I would not limit the award to work performed prior to November 8, 2019. I would include attorney fees for all the work related to request No. 16. I would also make a final determination on the amount of attorney fees after reviewing an itemized billing statement submitted by Hogan Lovells—which must be supported by independent evidence—demonstrating the reasonableness of the hourly rates charged and the hours billed. *See* R.C. 149.43(C)(4) (listing four criteria for a court to apply before awarding reasonable attorney fees).

{¶ 87} Indeed, under R.C. 149.43(C), Hogan Lovells must demonstrate that the attorney fees it is requesting are "reasonable," R.C. 149.43(C)(4)(a), and not punitive, but "remedial," R.C. 149.43(C)(4)(a). Specifically, the itemized billing statements should reflect the time that Hogan Lovells spent on its public-records request, this mandamus action, and the itemized billing statement itself. R.C. 149.43(C)(4)(b) and (c). And not only may DRC respond to Hogan Lovells's application for attorney fees, but this court may also reduce the award of attorney fees if it finds that "an alternative means should have been pursued to more effectively and efficiently resolve the dispute that was subject to the mandamus action," R.C. 149.43(C)(4)(d). Hogan Lovells should note that "fee applications submitted to this court should contain separate time entries for each task, with the time expended on each task denoted in tenths of an hour" and that "[t]his court will no longer grant attorney-fee applications that include block-billed time entries."

*State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 7, 14.

*Conclusion*

{¶ 88} I concur in the majority's judgment that the records requested by Hogan Lovells pursuant to request No.11 are exempt from disclosure because those records are protected by the attorney-client privilege.  However, I dissent from the majority's judgment regarding Hogan Lovells's request No. 16.  Because the records-of-inmates exemption under R.C. 5120.21(F) applies only to those records referred to in R.C. 5120.21, I would grant Hogan Lovells a writ of mandamus in part and order DRC to produce the records sought by Hogan Lovells in its request No. 16, minus any of Henness's medical assessments or psychological reports and any confidential personal information relating to DRC's employees.  Because I would grant the writ of mandamus to that extent, I dissent from the majority's holdings as to the limitations on the awards of statutory damages and attorney fees.

{¶ 89} Therefore, for the foregoing reasons, I concur in part and dissent in part from the judgment of the majority.

DEWINE and STEWART, JJ., concur in the foregoing opinion.

_____

Graydon, Head & Ritchey, L.L.P., John C. Greiner, and Darren W. Ford, for relators.

Isaac, Wiles, Burkholder & Teetor, L.L.C., Mark Landes, and Aaron M. Glasgow, for respondent.

_____