[Cite as *State ex rel. Hill v. Adult Parole Officer Campbell*, 2022-Ohio-354.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert Hill, | : | |
| Relator, | : | |
| v. | : | No.  20AP-510 |
| Adult Parole Officer T. Campbell et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on February 8, 2022

**On brief:** *Robert Hill*, pro se.

**On brief:** *Dave Yost,* Attorney General, and *Mark W. Altier*, for respondents.

IN MANDAMUS

DORRIAN, J.

{¶ 1}  Relator, Robert Hill, an inmate at Southeastern Correctional Institution ("SCI"), commenced this original action requesting this court issue a writ of mandamus ordering respondents Ohio Department of Rehabilitation and Correction ("ODRC"), Adult Parole Officer Tammie Campbell, Institutional Inspector Stanley Miller, and Staff Counsel Sarah Pierce, to comply with his request for records made pursuant to R.C. 149.43(B).

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate.  In an August 24, 2021 decision appended hereto, the magistrate recommended this court deny Hill's petition for a writ of mandamus, concluding Hill can show neither a clear legal right to receive the requested documents nor a clear legal duty on the part of respondents to provide such documents.

{¶ 3}  Hill did not file objections to the magistrate's decision.  Civ.R. 53(D)(4)(b) states "[w]hether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification."  Civ.R. 53(D)(4)(c) states "[i]f no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision."

{¶ 4}  We find there is a defect evident on the face of the magistrate's decision and only adopt the magistrate's findings of fact, and not the conclusions of law.  First, we find a defect in the magistrate's application of the interpretation of "records of inmates" from *State ex rel. Hogan Lovells U.S., L.L.P. v. Ohio Dept. of Rehab. & Corr.*, ____ Ohio St.3d ____, 2021-Ohio-1762, to this case.  Second, we find a defect in the magistrate's acceptance of ODRC averment that the requested records, in particular, "judgment entries, sentencing entries, and/or documents" and resource material showing he has prior convictions for sex or arson offenses, do not exist.

{¶ 5}  As the magistrate noted, Hill made three separate public records requests: (1) a June 15, 2020 request, made by prison kite, for paper copies of electronic kites he sent to Campbell and her disposition of those kites, (2) a June 19, 2020 request, made by paper kite, for all electronic communications Hill submitted to Campbell in June 2020 and the dispositions of those communications, and (3) a June 23, 2020 request for any judgment entries, sentencing entries, and/or documents regarding any sex offenses of which Hill had been convicted as either a juvenile or an adult.  The magistrate concluded Hill was not entitled to the records he seeks because they were either "records of inmates" exempt from public records requests pursuant to R.C. 5120.21(F) or the records do not exist.

{¶ 6}  Regarding the interpretation of "records of inmates,"[1] contrary to the magistrate's conclusion, we do not extend the holding in *Hogan Lovells* at ¶ 36 to the circumstances of this case.  Therefore, we do not adopt the magistrate's decision to the extent it concluded the records requested by Hill were considered "records of inmates" exempt from public records pursuant to R.C. 5120.21(F).

---

[1] Ohio Adm.Code 5120:1-1-01(I) states that " '[i]nmate' shall include a prisoner, resident, convict, offender, or similar classification as used in the Revised Code or Administrative Code."

{¶ 7} As the magistrate noted, pursuant to R.C. 5120.21(F), "records of inmates committed to the department of rehabilitation and correction as well as records of persons under the supervision of the adult parole authority shall not be considered public records as defined in section 149.43 of the Revised Code."

{¶ 8} In *Hogan Lovells*,[2] the Supreme Court of Ohio held that "[b]ecause the definitions of 'records' and 'inmates' are not in question, the meaning of 'records of inmates' turns on 'of,' a word of many uses. * * * Here, 'of' simply means 'relating to,' 'with reference to,' or 'about.' * * * So in looking at R.C. 5120.21(F) alone, it is evident that the General Assembly broadly exempted records that relate or refer to inmates." *Id.* at ¶ 36, quoting *Webster's Third New International Dictionary* 1565 (1993). The court went on to state specifically, however, that "[t]he question before this court is whether the records [O]DRC withheld in response to request No. 16 are records that relate or refer to an inmate. We hold that the withheld records fit within that definition because they provide specific information about [inmate] Henness, document the activities that [O]DRC undertook in preparing to execute him, and refer to facts, circumstances, or activities specifically related to [inmate] Henness." *Id.* at ¶ 41.

{¶ 9} We distinguish the facts in *Hogan Lovells* from the facts in this case. In *Hogan Lovells*, Hogan Lovells, a law firm, sought records of the lethal injection of a particular inmate. Here, the records which Hill seeks: (1) relate to himself,[3] and (2) are the basis of the Ohio Adult Parole Authority's ("OAPA") denial of his eligibility for Transitional Control. Specifically, Hill seeks "judgment entries, sentencing entries, and/or documents" regarding any sex or arson offenses of which Hill has been convicted as either a juvenile or

---

[2] In *Hogan Lovells*, as relevant to the issue here, three justices concurred the relators were not entitled to a writ of mandamus for the release of records because such records were exempt from public records requests as "records of inmates" under R.C. 5120.21(F). One justice concurred in judgment only. Three justices dissented in part, specifically as to the majority interpretation and application of the term "records of inmates."

[3] ODRC already recognizes such a distinction—between records requested by an inmate himself or herself regarding himself or herself and records requested by other inmates or other persons regarding a different inmate—in its administrative rules and internal policies. *See* Ohio Adm.Code 5120:1-1-36(E) which makes inmates ineligible to receive non-public parole board records of "other inmates." *See also* ODRC's internal policy 07-ORD-12, effective September 14, 2020 regarding the Bureau of Sentence Computation ("BOSC") Legal File Division, Sec. VI, (I) which states "(1) [a]n offender may obtain information regarding their sentence calculation by corresponding via kite to the BOSC [and] (2) [a]n offender shall not be permitted to obtain information from the BOSC legal file of another offender or a former offender."

an adult.  (Compl. at ¶ 20.)  Hill denies that he has ever been convicted of a sex or arson offense.  To apply the holding in *Hogan Lovells* regarding the definition of records of inmates to this case prevents Hill from researching, verifying, and objecting to the OAPA's denial of his eligibility on these grounds.

{¶ 10} Included in the stipulated record is a Notice of Transitional Control Ineligibility dated May 21, 2020.  This form is initialed by Campbell.  On this form is a statement "[p]lease remove the offender from the Transitional Control screening list for the following reason(s)."  An "x" is marked in the box next to a typed statement which states "[s]erving a sentence for an offense specified in Chapter 2907 O.R.C. or has a prior conviction for an offense specified in Chapter 2907 of the O.R.C.  Includes Conspiracy (ORC 2923.01), Attempt (ORC 2923.02), or Complicity (ORC 2923.03) to commit these offenses. / Excludes Solicitation 2907.24, Prostitution 2907.25."  (Relator's Stip. of Evid., Ex. 1.)  An "x" is also marked in the box next to a typed statement which states "[s]erving a sentence of previously convicted of Aggravated Arson (ORC 2902.02) or Arson (ORC 2909.03) / Includes Conspiracy (ORC 2923.01), Attempt (ORC 2923.02), or Complicity (ORC 2923.03) to commit these offenses."  (Relator's Stip. of Evid., Ex. 1.)  Also included in the stipulated record is a Notice of Transitional Control Ineligibility dated March 26, 2008.  On this form is a statement "[p]lease remove the offender from the call sheets and works sheets for the following reason(s)."  An "x" is marked in the box next to a typed statement which states "[s]erving a sentence for an offense specified in Chapter 2907 O.R.C. or has a prior conviction for an offense specified in Chapter 2907 of the O.R.C."  A handwritten note to the side of the typed statement states "6/20/86 – GSI / 10/8/87 – Arson = Juvenile." (Resp.'s Stip. of Evid., Pierce Aff., Att. A.)

{¶ 11} Hill attempted to determine the reason for the ineligibility determination with kites and inquiries back and forth with Campbell in June 2020.  He avers that he requested the entries and/or documents he seeks via kite on June 19, 2020, but Campbell denies ever receiving such a kite.  Then, upon Campbell's instruction, Hill reached out to the inspector of institutional services at SCI, to no avail.

{¶ 12} Hill also tried to work with SCI Staff Counsel Sarah Pierce when she responded to his public records request via July 5, 2020 letter and asked for additional information.  Hill responded via July 13, 2020 letter:

> Thank you for your correspondence dated July 6, 2020 concerning my public information request on June 23, 2020. In your response you state that "If you would like to provide more clarity about the exact records you are looking for, I am happy to continue to process your request with that additional information." I'm sorry but I don't think I can be any clearer as to my request. My request for public information was specific. Again that request was for:
>
> "Any judgment enttries, sentencing entries, and/or documents regarding any sex offense I (Robert Hill #A614-862) have been convicted of whether as a juvenile or adult."
>
> These request are made for reason that on May 21, 2020 South-eastern Correctional Institution Adult Parole Officer Ms. Campbell denied me Transitional Control pursuant to Ohio Administrative Code 5120-12-01 for reasons that I have been convicted of a sex and arson charges. I am completely aware that I have never been charged or convicted of those offenses as a adult or juvenile, thus she has made a mistake in her screening procedure. I informed her that she had made a mistake, however, her response was that her decision is final and there is no appeal.

(Sic passim.) (Rel.'s Stip. of Evid., Ex. 5.)

{¶ 13} It is clear Hill is simply trying to obtain the entry or document upon which the OAPA has denied him eligibility for Transitional Control. The OAPA should provide him with this information, if not via his kite request, then via this public records request.

{¶ 14} Regarding whether the records exist, we do not accept, without further exploration or explanation, ODRC's averment that the judgment entries, sentencing entries and/or documents do not exist. Therefore, we do not adopt the magistrate's decision to the extent it concluded the records do not exist.

{¶ 15} ODRC counsel Pierce avers in her affidavit that "no such records exist [and] that ODRC maintains sentencing and related entries for which an individual was incarcerated with ODRC and does not maintain those records for non-ODRC incarcerations as an adult or juvenile." (Pierce Aff. at 2.) Pierce's focus is on judgment or sentencing entries. However, Hill avers in his complaint that in response to his June 11, 2020 inquiry with Campbell regarding her determination that he was ineligible for Transitional Control, Campbell responded by stating: "Your case has been reviewed and *resource material*

indicates you do have a conviction for a 2907 offense.  You are not eligible for Transitional Control." (Emphasis added.)  (Compl. at ¶ 9.)  What is this "resource material" to which Campbell referred and upon which she based her ineligibility determination?[4]  This is what Hill seeks—the resource material.  ODRC may not maintain entries, however, in addition to entries, Hill requested "and/or documents."

{¶ 16} R.C. 5149.07 states that ODRC shall maintain central files and records pertaining to the work of the OAPA, and shall coordinate the department's record keeping with that of the OAPA.  We take judicial notice that the ODRC website posts ODRC Policy Number 108-ABC-05, effective June 3, 2019, regarding Transitional Control screening, and the policy states that "[a]ll relevant documents utilized in the [Transitional Control] screening process shall be forwarded to the Bureau of Records Management (BORM) Document Imaging Group."  ODRC  Policy Number 108-ABC-05, Sec. VI, B, 4, f.[5]  *See* www.drc.ohio.gov/policies-procedures (accessed Feb. 8, 2022).

{¶ 17} We grant a limited writ of mandamus to remand for ODRC to research the "resource material" upon which Campbell based her ineligibility determination.  If such

---

[4] Moreover, this is what Hill sought to determine with his kites and correspondence directed to Campbell in June 2020, which explains his request for copies of those kites.

[5] Furthermore, ODRC Policy Number 108-ABC-05, effective June 3, 2019, regarding Transitional Control outlines "Transitional Control Screening Procedures for the Ohio *Parole Board Staff*." (Emphasis added.) *See* Sec. VI, B.  It states that "[i]f exclusionary criteria exists that makes an inmate ineligible to participate in the TRC program, *the PBPO or designated Parole Board staff* shall complete the Transitional Control Ineligibility form (DRC 3114)." (Emphasis added.) *See* Sec. VI, B, 4, d. Ohio Adm.Code 5120:1-1-36 addresses parole board public records and non-public records. Division (A) indicates that documents of the OAPA, including the parole board, shall be subject to Ohio Adm.Code 5120-9-49. Division (C) of Ohio Adm.Code 5120:1-1-36 defines "parole board record" as "any record that is provided to or considered by the parole board in making its decisions" and "*any record prepared by the parole board in carrying out its responsibilities under the Revised Code*." (Emphasis added.) Division (B) states that the following documents of the parole board shall be deemed public records: determinations, orders, minutes, and records of attempts to provide notice to certain persons in connection with parole board hearings. Non-public parole board records may be made available after a written request is received which specifically identifies the records being requested and "*shall be granted*" unless the disclosure of the records would foreseeably result in harm to any person, would present a security risk to any institution or other facility or would materially interfere with the achievement of a fair parole hearing. (Emphasis added.) Division (F) "Non-public parole board records" states the request "shall also be made available to members of the public * * * *except that inmates * * * are ineligible to receive non-public board records of other inmates*." (Emphasis added.) As noted previously, is requesting records regarding himself, not regarding other inmates.

resource material exists,[6] Hill has a clear legal right to the same and ODRC has a clear legal duty to provide the same to Hill.

## IV. Disposition

{¶ 18} Pursuant to Civ.R. 53, we adopt the magistrate's findings of fact, but not the magistrate's conclusions of law.  We grant a limited writ of mandamus and order ODRC to research the "resource material" upon which Campbell and the OAPA based the determination that Hill was ineligible for Transitional Control.  Accordingly, we grant Hill a limited writ of mandamus.

*Limited writ of mandamus granted.*

JAMISON, J., concurs.
LUPER SCHUSTER, P.J., dissents.

LUPER SCHUSTER, P.J., dissenting.

{¶ 19} Because I would find Hill is not entitled to the requested writ of mandamus for any of his three public records requests, I respectfully dissent.

{¶ 20} As to the June 15, 2020 request, I would find that, pursuant to R.C. 5120.21(F) and the Supreme Court of Ohio's decision in *Hogan Lovells*, the requested records are "records of inmates" within the meaning of the statute and, therefore, are exempt from disclosure as public records under R.C. 149.43.  While the majority declines to extend the holding of *Hogan Lovells* to this case because Hill, an inmate, is requesting records that relate to himself, I note that neither the language of R.C. 5120.21(F) nor the

---

[6] If no such resource material exists, the Supreme Court's holding in *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, suggests that as in the parole context, in this Transitional Control context, ODRC shall proceed to verify Campbell's conclusion that Hill has previously been convicted of a sex offense and/or arson offense as an adult or a juvenile, thereby making him ineligible for Transitional Control. In *Keith* the court held: "Inherent in the language of Ohio Adm.Code 5120:1-1-07(B) is that the board must consider various reports and 'other relevant written information' pertaining to the inmate whose parole is being considered. The existence of this formal process for considering parole rightly gives parolees some expectation that they are to be judged on their own substantively correct reports. Requiring the board to consider specific factors to determine the parolee's fitness for release would not mean anything if the board is permitted to rely on incorrect, and therefore irrelevant, information about a particular candidate." *Id.* at ¶ 23. The same can be said for Ohio Adm.Code 5120-12-01(F) which sets forth the minimum criteria to be eligible for Transitional Control, including that a prisoner "shall not have any past or current convictions or juvenile adjudications for a violation of any sex offense [as defined therein]" and "shall not have any past or current convictions or juvenile adjudications for arson [as defined therein]." Ohio Adm.Code 5120-12-01(F)(10) and (12).

holding in *Hogan Lovells* makes an exception to the public records exemption where the "records of inmates" are requested by the inmate, himself. I wish to emphasize, however, that my conclusion that Hill cannot show a clear legal right to these records is limited to the public records context. While I would find these records are exempt from disclosure as *public records* under R.C. 149.43, Hill may have some other mechanism to obtain his requested inmate records, and my opinion should not be interpreted as suggesting that ODRC would not have to provide an inmate access to and copies of his or her own records in the appropriate context.

{¶ 21} As to the June 19, 2020 request, I would note that Campbell did not assert that the requested documents did not exist; rather, she maintained that Hill did not actually make the request because she had no record of his June 19, 2020 paper kite. Moreover, even if Hill properly made his request on June 19, 2020, I would find his request for a writ of mandamus related to his June 19, 2020 kite fails for the same reasons as his June 15, 2020 request. Specifically, the June 19, 2020 request sought all electronic communications Hill had submitted to Campbell in June 2020 and her dispositions therefrom. Because this request sought "records of inmates" as that phrase is used in R.C. 5120.21(F), I would again conclude that the records are exempt from disclosure as public records.

{¶ 22} Lastly, as to Hill's June 23, 2020 request seeking any judgment entries, sentencing entries, and/or documents regarding any convictions he has had, as either a juvenile or an adult, of any sex offense, I do not agree with the majority's position that we cannot accept Pierce's statement in her affidavit that ODRC does not maintain sentencing entries for non-ODRC incarcerations and that her independent search revealed no such documents. Hill did not file any objections to the magistrate's factual findings. Thus, I would conclude ODRC has no clear legal duty to comply with the request for these documents as the uncontroverted evidence here demonstrates the documents do not exist within the control of ODRC. *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, ¶ 15. Additionally, I would note that Pierce averred that, in response to Hill's mandamus action, she conducted another search of records related to Hill's prior requests for transitional control and attached to her affidavit a copy of a prior denial, completed by Hill's parole officer, indicating Hill had juvenile convictions that rendered him ineligible for

transitional control.  As Pierce attached this document to her affidavit, Hill now has a copy of that document.

{¶ 23} For these reasons, I would find the magistrate correctly determined Hill is not entitled to the requested writ of mandamus for any of his three public records requests, though I would reach that conclusion for different reasons than the magistrate. Accordingly, I respectfully dissent.

———————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Robert Hill, | : | |
| Relator, | : | |
| v. | : | No.  20AP-510 |
| Adult Parole Officer T. Campbell et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 24, 2021

*Robert Hill,* pro se.

*Dave Yost,* Attorney General, and *Mark W. Altier,* for respondents.

IN MANDAMUS

**{¶ 24}** Relator, Robert Hill, has filed this original action seeking a writ of mandamus ordering respondents, Adult Parole Officer Tammie Campbell (individually "Campbell"), Institutional Inspector Stanley Miller (individually "Miller"), and Staff Counsel Sarah Pierce (individually "Pierce"), to comply with his request for records made pursuant to R.C. 149.43(B).

Findings of Fact:

**{¶ 25}** 1. Relator is a prisoner incarcerated at Southeastern Correctional Institution ("SCI").

{¶ 26} 2. Campbell is an officer for the Ohio Adult Parole Authority, which operates under the Ohio Department of Rehabilitation and Correction ("ODRC").

{¶ 27} 3. Miller is the Inspector of Institutional Services at SCI.

{¶ 28} 4. Pierce is a staff counsel for ODRC.

{¶ 29} 5. Relator asserts in his petition for writ of mandamus the following: (1) on June 1, 2020, he noticed on a prison computer system that his status went from being eligible for transitional control to ineligible; (2) on June 1, 2020, he sent Campbell an electronic "kite" (a method of communications used in the correctional institution) requesting information as to why his status was changed, explaining why he was eligible for transitional control, and claiming he did not commit any of the crimes in Ohio Adm.Code 5120-12-01 that would have rendered him ineligible for transitional control; (3) Campbell responded to the communication, stating relator was screened ineligible for transitional control, and no further details would be released; (4) on June 11, 2020, he received a May 21, 2020, notice of ineligibility for transitional control, which indicated that Campbell denied relator transitional control because he had a current or prior conviction for sex and arson offenses; (5) relator sent another kite to Campbell, explaining that there was a mistake, because he had never been convicted of a sex or arson offense; and (6) Campbell responded that resource material indicated he had a conviction for a sex offense that rendered him ineligible for transitional control.

{¶ 30} 6. On June 15, 2020, relator sent a prison kite to Campbell, requesting that Campbell provide him with paper copies of electronic kites he sent to Campbell and all of her dispositions of these kites. On June 16, 2020, Campbell responded via the kite system and told relator to direct his request to the institutional investigator.

{¶ 31} 7. Relator contends that he directed the request to the institutional investigator on June 16, 2020, and the investigator responded that investigators do not handle making copies of electronic kites, and ODRC is not obligated to provide copies of kites filed electronically.

{¶ 32} 8. Relator contends that, on June 19, 2020, he submitted a paper kite to Campbell, which contained a public records request requesting all electronic communications submitted to her by relator in June 2020 and all dispositions therefrom. Campbell did not respond.

{¶ 33} 9. On June 23, 2020, relator sent by U.S. Mail, a public records request to ODRC's bureau of record management, requesting that any judgment entries, sentencing entries, and/or documents regarding any sex offense relator has been convicted of as a juvenile or adult.

{¶ 34} 10. On July 6, 2020, Pierce responded to relator's June 23, 2020, request, stating that ODRC maintains sentencing and related entries for which an individual was incarcerated with ODRC but does not maintain those records for non-ODRC incarcerations as an adult or juvenile.

{¶ 35} 11. Relator maintains in his petition for writ of mandamus that, on September 25, 2020, relator submitted an electronic communication to Institutional Inspector Miller, requesting public records of all electronic communication relator submitted to Campbell in June 2020; the June 17, 2020, electronic communication relator submitted to the SCI investigator; the June 17, 2020, electronic communication submitted to Miller, and the June 18, 2020, grievance. Relator asserts that Miller responded on October 2, 2020, that he has been directed by central office not to print kites.

{¶ 36} 12. On November 2, 2020, relator filed a petition for writ of mandamus, in which he claimed respondents failed to comply with his public records requests pursuant to R.C. 149.43 by (1) failing to provide him with any judgment entries, sentencing entries, and/or documents regarding any sex or arson offenses he has been convicted of whether as a juvenile or adult; and (2) failing to provide him printouts of all the electronic communications relator had sent to Campbell. Relator also requested court costs and statutory damages pursuant to R.C. 149.43(C) based upon respondents' failure to comply with his public-records request.

{¶ 37} 13. ODRC submitted as evidence in this case a January 4, 2021, affidavit from Pierce. Pierce averred that, after the present litigation was initiated, she conducted another search of ODRC records, but she could find no sentencing records, judgment entries, or similar records relating to relator's ODRC incarcerations and most-recent request for transitional control maintained by ODRC. She also averred that she researched relator's prior requests for transitional control as they relate to his public-records requests and found he was deemed ineligible for transitional control on his prior

ODRC number for the same reasons he was deemed ineligible on his current number, i.e., juvenile convictions for gross sexual imposition and arson. However, ODRC does not maintain copies of the sentencing entries, judgment entries, or similar record for those convictions. Pierce provided to relator a copy of a prior transitional control determination, noting that relator would have received a copy of his record at the time of the ineligibility determination.

{¶ 38} 14. ODRC also submitted a January 12, 2021, affidavit, from Campbell. Campbell averred that, after an exhaustive search, she determined that no record of relator's June 19, 2020, request exists, and she has no record of receiving a paper kite from relator on or around June 19, 2020.

Conclusions of Law:

{¶ 39} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). However, relators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course of law. *State ex rel. ACLU of Ohio v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, ¶ 24, citing *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 41.

{¶ 40} R.C. 149.43(B)(1) requires a public office to make public records available for inspection upon request. A person denied access to public records may compel production of the requested records in a mandamus action. R.C. 149.43(C)(1)(b). See also *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, ¶ 6. The requester must establish by clear and convincing evidence a clear legal right to the records and a corresponding clear legal duty on the part of the respondent to provide them. See *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, ¶ 10. When a public office withholds responsive records, it has the burden of showing that the records are statutorily exempted from disclosure. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, paragraph two of the syllabus. Exceptions to disclosure are strictly construed against the public office withholding the records. Id.

**{¶ 41}** R.C. 5120.21(F) provides:

> (F) Except as otherwise provided in division (C) of this section, records of inmates committed to the department of rehabilitation and correction as well as records of persons under the supervision of the adult parole authority shall not be considered public records as defined in section 149.43 of the Revised Code.

**{¶ 42}** Recently, the Supreme Court of Ohio addressed what constituted "records of inmates," as used in R.C. 5120.21(F). *State ex rel. Hogan Lovells U.S., L.L.P. v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-1762. In *Hogan Lovells*, pursuant to a public-records request, ODRC produced records, including training logs, training forms, agendas for planning and status meetings, and execution-team training schedules, but ODRC withheld records of trainings or exercises conducted for the execution of a specific inmate, asserting that those records were exempt under R.C. 5120.21(F) as "records of inmates." The requester of the records filed a mandamus action. The Supreme Court denied the mandamus. The court first found that the plain and ordinary meaning of the phrase "records of inmates," as used in R.C. 5120.21(F), is records relating to, with reference to, or about inmates. The court explained that, looking at R.C. 5120.21(F) alone, it is evident that the General Assembly broadly exempted records that relate or refer to inmates. The court also noted that, although statutory exemptions to the Ohio's Public Records Act must be construed strictly against a public office, there is no ambiguity as to the term "records of inmates," so there is no need to resort to that rule of construction. The court held that the withheld records in *Hogan Lovells* fit within the definition of "records of inmates" in R.C. 5120.21(F) because they provide specific information about the inmate, document the activities that ODRC undertook in preparing to execute him, and refer to facts, circumstances, or activities specifically related to that inmate.

**{¶ 43}** In the present case, relator requested (1) any judgment entries, sentencing entries, and/or documents regarding any sex or arson offenses he has been convicted of whether as a juvenile or adult, and (2) printouts of all the electronic communications relator sent to Campbell. All of these records requested by relator fit within the definition of "records of inmates" in R.C. 5120.21(F) because they provide specific information about an inmate (relator), and refer to facts, circumstances, or activities specifically related to

that inmate (relator). Therefore, pursuant to *Hogan Lovells*, the records requested by relator are "records of inmates," as that phrase is used in R.C. 5120.21(F) and, therefore, are exempt from disclosure as a public record as defined in R.C. 149.43.

{¶ 44} Furthermore, a writ of mandamus will not issue when the uncontroverted evidence shows that the requested documents do not exist. *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, ¶ 15. Here, Pierce averred she could find no sentencing records, judgment entries, or similar records maintained by ODRC that related to relator's ODRC incarcerations, his most-recent request for transitional control, or his prior requests for transitional control. Campbell averred that, after an exhaustive search, she determined that no record of relator's June 19, 2020, request exists, and she has no record of receiving a paper kite from relator on or around June 19, 2020. Thus, the evidence presented in this case demonstrates that these requested records do not exist.

{¶ 45} Finally, because ODRC did not fail to comply with a public records request, relator is not eligible for an award of statutory damages or court costs under R.C. 149.43(C).

{¶ 46} Accordingly, it is the magistrate's decision that relator can show neither a clear legal right to receive the requested documents nor a clear legal duty on the part of the respondents to provide such documents. Therefore, the magistrate recommends that this court deny relator's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).